CLARENCE ANDREWS, Plaintiff, *v.* ROBERT W. DE FOREST and Others, Impleaded with FRANCIS H. WEEKS, Defendant.

*Partnership — a firm employed to pass a title is not bound to furnish money to purchase the property — liability for the acts of a partner who is the attorney in fact of the client.*

One Andrews, for whom the firm of De Forest & Weeks had at one time been counsel, after an absence in Europe, during which Weeks had managed his estate as attorney in fact, in 1888 — unaware that the firm, which continued to occupy the same offices, had in the meantime been dissolved — employed Weeks, as a member of the firm, to purchase a house, and gave, in partial payment of the purchase price of the house, two mortgages aggregating $25,000, of which one for $5,000 was made payable to Weeks himself for his alleged advances made upon the sale, it being understood that a cash payment of $7,500 was to be made by Weeks out of Andrews' moneys in his hands as attorney in fact. A mortgage of $13,500 existed on the premises at the time of the sale, which, although represented by Weeks as having been paid by him, remained a lien thereon and was subsequently foreclosed. The firm received no money from the transaction, even the fee paid for examining the title having been retained by Weeks, who, in accounts rendered to Andrews, and not objected to by the latter, charged himself personally with both the $5,000 and the $20,000 mortgages. Weeks subsequently became insolvent, and the $5,000 mortgage was surrendered to Andrews in part payment of his claims against Weeks' estate.

*Held,* that the firm was not liable to Andrews in the premises;

That the duty of a firm employed to examine a title does not usually extend to the obligation of raising money to complete the purchase, and certainly not to that of making advances for that purpose, especially where one of the partners acts in the capacity of an attorney in fact for the purchaser, and it is understood that the receipt and payments of money are to be made by him in such capacity.

Motion by the defendants, Robert W. De Forest and others, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance upon the verdict of a jury in favor of the plaintiff, rendered after a trial at the New York Trial Term.

*John C. Tomlinson,* for the plaintiff.

*Elihu Root,* for the defendants.

Rumsey, J. :

From the year 1874 down to December, 1886, the defendants were law partners under the firm name of De Forest & Weeks, when their partnership was dissolved by mutual consent. After that time, however, down to the year 1890, at least, they remained in the same offices which they had occupied when they were in partnership, and there was no change in the condition of affairs in those offices, the firm name remaining upon the outer door as before and each member of the firm occupying a private room, upon the door of which his own name was painted, opening from the main office, so that after the dissolution of the partnership any one who was not aware of the real fact that the partnership had been dissolved and that they were doing business individually would have been justified in assuming that they were still law partners. In the year 1875 the father of the plaintiff died, and Mr. De Forest became one of his executors, and the firm of De Forest & Weeks were counsel for the estate. After that time and down to 1883 the plaintiff had more or less business, in his capacity of devisee of his father's estate, with the firm of De Forest & Weeks, and was aware of the existence of the firm. In 1883 he went abroad to live and remained there until 1888, when, having married, he returned to this country. Shortly after his departure from the United States

he made Francis H. Weeks, individually, his attorney in fact, to take general charge of his affairs, and he gave to him from time to time powers of attorney for that purpose, under which Weeks had the general charge of the property of the plaintiff, collecting his rents and interest and other income, making such investments as he thought proper, subject to the approval of the plaintiff, or as he was directed by the plaintiff to make, attending to the repairs upon the plaintiff's buildings, and generally having entire control of all business of the plaintiff which was necessary to be transacted in this country, where the whole fortune of the plaintiff was invested. In his capacity as attorney in fact Weeks was accustomed to render to the plaintiff, from year to year, accounts of his business, which the plaintiff examined as they were received by him. After he went abroad the plaintiff had no communication or business relation with the firm of De Forest & Weeks as such, but his business was entirely with Weeks in his capacity as attorney in fact for him. When the plaintiff returned to this country, in the year 1888, he proceeded to buy a house, and employed the firm of De Forest & Weeks to take charge of the purchase for him. What occurred at that time is best stated in the plaintiff's own words, as to the truth of which there is no dispute: He says: "I returned in 1888, and at this time I had been married. I purchased a house in Seventy-third street in this city. I went to the office of De Forest & Weeks and I saw Mr. Weeks. I told him I wanted to buy this house, and asked him to attend to the necessary papers for the purchase of the house, and find out about the mortgages, to see if the title was all right and clear, and find out how much money could remain on mortgage. He said that they would attend to it for me, and have the title examined, which I supposed they did." The witness further stated that he had a conversation with Mr. Weeks about the incumbrances upon the property, in which he was told that he could leave $25,000 of mortgage on the property, and that only $7,500 in cash would have to be paid, and that the mortgages were to be $20,000 to Mr. Gay, as executor of R. H. Rickard, and $5,000 to himself. But this statement in regard to the mortgages seems to have been made after the investigation of the title which the firm of De Forest & Weeks were requested to make. The title was examined and passed, and the transaction was finally consum-

mated. The seller conveyed the property to the plaintiff, who executed two mortgages, one of $20,000 to the estate of Rickard, and one of $5,000 to Weeks himself. The amount of these two mortgages was charged by Weeks to himself personally in his account with the plaintiff as his agent. At the time the house was purchased there were two mortgages upon it of $13,500 each. One of these mortgages was paid by Weeks out of the money which he received as the proceeds of the mortgages given by the plaintiff upon the property, and in addition he made other payments, amounting in all to $18,914.28. It was represented to the plaintiff by Weeks that the other mortgage for $13,500 was also paid, and Weeks credited himself with the amount of that payment, and charged it to the plaintiff upon his account, so that the plaintiff had the right to believe that both mortgages upon the house which he bought were discharged. He was not made aware that this had not been done, and that the second mortgage for $13,500 still remained a lien upon his house, until some time in the year 1893, when Weeks, having proved to be an embezzler of many large estates and having absconded, ceased to keep up the interest on the mortgage for $13,500, as he had been doing, and the mortgage was foreclosed, and the plaintiff evicted from the house. Weeks made an assignment for the benefit of his creditors, and the plaintiff made a claim against the estate of Weeks for the amount of this mortgage which he should have paid, but did not, and received a small dividend from time to time upon that claim. The estate, however, was not sufficient to pay the claims in full, and the plaintiff subsequently demanded of the defendants composing the firm of De Forest & Weeks that they should pay to him the amount of the mortgage which was left outstanding upon the premises, alleging that the firm of De Forest & Weeks had agreed, in addition to examining the title, to secure and obtain a loan for him of $20,000 upon the premises, which was to be used in paying off this mortgage ; that the loan was obtained, but that the mortgage was not paid, although the defendants represented that it had been paid, and that the defendants retained the sum of $13,500 which they had received for that purpose ; and seeking to recover from the firm that sum which it was alleged they retained in their possession, although it belonged to him.

It appeared upon the trial that no money whatever had been

received by the firm of De Forest & Weeks upon this transaction except their fee for examining the title. A check for $20,000, the proceeds of the Rickard mortgage, which had been given to the firm of De Forest & Weeks, but received by Weeks personally, was indorsed by him with the firm name and deposited to his own credit and credited by him personally to the account of Andrews. Andrews was charged by Weeks in his account with the sum of $250 as paid to De Forest & Weeks for examining the title of the Seventy-third street house, but this sum was not, in fact, paid to the firm of De Forest & Weeks, but was retained by Weeks as the fee which he was entitled to for that particular service. It is not disputed that there was to be paid upon the purchase price of this house, in addition to the $27,000 of mortgages, the sum of $7,500 in cash, which was the amount necessary above the mortgages to complete the purchase price, and it is not claimed by the plaintiff that this sum or any other sum of money was paid by him to the firm of De Forest & Weeks to enable them to carry out this contract; but it is quite clear that he expected that the cash payment was to be made out of his moneys in the hands of Weeks or by Weeks in the same manner as other payments had been made by him for the plaintiff. The claim of the plaintiff is that he supposed that De Forest and Weeks were still partners, and that the firm of De Forest & Weeks was retained by him not only to examine the title of this property, but to receive the money raised upon the mortgage and to pay off the incumbrances upon the property. The claim of the defendants, on the contrary, is that if the firm of De Forest & Weeks were retained at all in the matter as a firm, they were retained simply to do those things which are usually done by lawyers in that connection, and that the payment of the money upon the incumbrances was no part of their duty under the retainer and was not mentioned as a part of it, but that it was done, and was intended to be done, as the plaintiff knew, by Weeks in his capacity as attorney in fact, generally managing and controlling the plaintiff's affairs. The facts heretofore stated in this opinion are taken substantially from the testimony of the plaintiff and are not disputed.

When the testimony was closed, the defendant moved for the direction of a verdict upon the ground substantially that the

retainer of the firm of De Forest & Weeks was limited to an examination of the title, and their employment did not include the duty of receiving the money upon the mortgages and paying the incumbrances upon the land; and that, upon the facts, it was uncontradicted that the plaintiff did not suppose that they were retained for that purpose. The court denied the motion and sent the case to the jury, by whom a verdict was rendered in favor of the plaintiff against the defendants for the amount of $13,500 and interest. Many requests to charge were made by the defendants, some of which were charged substantially as made, and those requests as charged seem to us to dispose of the case, so that upon the presumption that the requests properly state the law, there was no question left for the jury, and the action of the court in sending the case to the jury was totally inconsistent with the charge which it gave at the request of the defendants. But it is not necessary to examine those requests or the charge any further, because the only question necessary to be determined here is whether, upon the testimony of the plaintiff, it can be said that the contention made by the defendants follows as a conclusion of law, and that there was no evidence which could be submitted to the jury upon which it was proper to find that the firm of De Forest & Weeks was retained to receive and pay out this money, and as a part of that retainer to satisfy this $13,500 mortgage. The purchase of this house took place early in the year 1889, and was finally closed about the first day of March in that year. At the end of the year Weeks delivered to the plaintiff the usual account of his transactions, which the plaintiff says was received and examined by him and talked over with Weeks. That account is in evidence. It appears from it that Weeks gave to himself, personally, credit on the first day of March for the loan of $20,000 from the Rickard estate and the mortgage of $5,000 given to him, and he charged to himself, personally, the money which he paid and said he had paid to apply upon this contract. This account was received by the plaintiff and examined and discussed and finally permitted to stand without any objection. No objection was ever made to the account or to the items until after the defalcation of Weeks, when the plaintiff, making his claim against the estate of Weeks for the amount of this $13,500 mortgage and other claims, insisted that the $5,000 mort-

gage, which had been given to Weeks and charged to the plaintiff in his account, should be given up to the plaintiff again, which was done, and the estate of Weeks was credited with that amount as received upon the $13,500.

Upon these undisputed facts, we are of the opinion that the plaintiff failed in his effort to show that the firm of De Forest & Weeks, as such, were liable upon their retainer to receive and pay out this money, or that the retainer included any such duty on their part. Admitting that they were retained as a firm for the purpose of examining the title, as is said by Mr. Andrews, it does not follow that they were retained for the purpose of completing this purchase. The duty of the examination of a title does not usually impose upon those who are retained for that purpose the duty of the raising of money by mortgage to complete the purchase, and certainly not the duty of advancing money out of their own pockets to pay incumbrances upon the property bought. Unless there was a special arrangement by which the firm of De Forest & Weeks agreed to take upon themselves that duty, as well as the usual examination of the title, they were not called upon to do it. There is no claim in the testimony of the plaintiff that he employed them for any such purpose. On the contrary, it appears not only by what he says as to his conversation with Weeks when he first spoke to him about the examination of the title, but by the accounts which were furnished to him and which were received by him without objection, that the receipt and payment of the money was to be made by Weeks, and was made by by him in his capacity as attorney in fact engaged in the management of the plaintiff's affairs. No other conclusion can be drawn from the testimony of the plaintiff. If Weeks were at that time the partner of the other persons who composed the firm of De Forest & Weeks, or if the circumstances were such that the plaintiff in retaining them had the right to believe that he was still a partner, as may be assumed for the purposes of this case, it yet does not follow that the firm as such were liable for a fraud committed by Weeks under his personal employment by the plaintiff. A fraud committed by a partner while acting on his own separate account is not imputable to the firm, although had he not been connected with the firm he would not have been in the position to commit the fraud. (1 Lindley on Part. [Ewell's ed.] 309.) As a matter of fact it

appears not only from the plaintiff's evidence, but from the other testimony produced by him upon the trial, that there was no communication between himself and the defendants other than Weeks in regard to this matter, and the other defendants can only be charged in this matter because of the fact that Weeks was a member of the firm of De Forest & Weeks, or that they so conducted themselves as to be estopped from denying that fact. But in such a case they are charged upon the estoppel, if at all, only so far as the law would charge them if the relation of partnership actually existed, and that in this case would be only so far as they were retained to do the particular act, or if the retainer necessarily involved the doing of that act. That they were not retained for that purpose is quite clear from the testimony of the plaintiff himself, as has been said, and it is equally clear that the relation in which Weeks stood to the plaintiff as his attorney in fact, was such that he alone was able or could be expected to pay out this money, because the money which was to be paid out was only that which he, personally, as attorney in fact to the plaintiff, had received, and held entirely outside of his status as a partner in this firm. Had the attorney in fact of the plaintiff been some other person than Weeks, no reason whatever could be suggested why the defendants should have been charged with his failure to pay out this money; but when the money was received by Weeks in his capacity as such attorney in fact, he stood towards the defendants precisely in the same situation as though he had never been a partner, and they, by paying over the money to him as such attorney in fact, relieved themselves from all liability to the plaintiff, precisely as though they had paid it over to some third person. This conclusion is strengthened by the fact that the plaintiff having been informed, in the year 1889, that Weeks had received and paid this money personally, did not object to it, but ratified it, and continued to deal with Weeks in regard to these matters as though it had been a proper transaction, to be done by him under his agency. Having consented that Weeks should occupy that position, it is too late for him now to say that the payment of the $20,000, and the giving of the $5,000 mortgage to Weeks, which he ratified by failing to object to it in 1889, was the act of the defendants and not the act of his attorney in fact, by whom it was ostensibly done at that time.

For the reasons thus stated, without considering more particularly various exceptions taken by the defendant, the exceptions must be sustained and the motion for a new trial must be granted, with costs to the defendant to abide the result of the action.

VAN BRUNT, P. J., BARRETT, WILLIAMS and PATTERSON, JJ., concurred.

Exceptions sustained and motion for new trial granted, with costs to the defendant to abide event.